# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CONSTANCE M. NOWAKOWSKI,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>Defendant. | No. 16 C 7904<br><br>Magistrate Judge Susan E. Cox |

## MEMORANDUM OPINION AND ORDER

Plaintiff Constance Nowakowski ("Plaintiff") filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). Plaintiff has filed a brief, which this Court will construe as a motion for summary judgment [dkt. 9], and the Commissioner has filed a cross-motion for summary judgment [dkt. 17]. For the reasons set forth below, Plaintiff's motion for summary judgment is denied, and the Commissioner's decision is affirmed.

## BACKGROUND

### I.  Procedural History

Plaintiff filed an application for DIB on May 31, 2012, alleging a disability onset date of December 17, 2010, due to fibromyalgia, chronic low back pain, spinal fusion, severe migraines, anxiety, and insomnia. (R. 14, 88, 154–57). Her claim was denied initially on October 22, 2012 and again upon reconsideration on April 12, 2013. (R. 14, 78–97). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on June 11, 2013. (R. 14). On November

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

19, 2014, Plaintiff, represented by counsel, appeared and testified before ALJ Sylke Merchan. (R. 68–75). The ALJ also heard testimony from vocational expert ("VE") Richard Fisher. (*Id.*). On January 26, 2015, the ALJ issued a written decision denying Plaintiff's application for DIB. (R. 14–26.) The Appeals Council ("AC") denied review on June 2, 2016, thereby rendering the ALJ's decision as the final decision of the agency. (R. 1–7); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).

## II. Medical Evidence

On January 3, 2012, Plaintiff presented to pain management specialist Yuliya Kin-Kartsimas, M.D., for her complaints of low back pain. (R. 305–06). Plaintiff reported low back pain which radiated to the left buttock, down to the leg and into the anterior thigh. (R. 305). She described the pain as sharp, burning, shooting, throbbing, and stabbing, and indicated that it was moderate to severe. (*Id.*). Plaintiff stated that her pain was aggravated by reaching, bending, sitting, lifting, and standing, and her pain was relieved by lying down, application of heat, and medications. (*Id.*). She indicated that her mood had been good, her pain was controlled with scheduled medications, and that she was doing well overall. (*Id.*). Upon physical examination, Dr. Kin-Kartsimas noted normal muscle tone and bulk, 5/5 strength, and limited range of motion of the lumbar and cervical spines. (R. 306). Dr. Kin-Kartsimas also noted mild lumbar paravertebral tenderness and an antalgic heel-to-toe gait. (*Id.*). Dr. Kin-Kartsimas assessed: disorders of the sacrum; unspecified arthropathy involving other specified sites; postlaminectomy syndrome of the lumbar spine; and unspecified musculoskeletal disorders and symptoms referable to the neck. (*Id.*).

Plaintiff continued to treat with Dr. Kin-Kartsimas approximately once a month through July 10, 2012. (R. 289–306). Physical examinations throughout this time period consistently

produced findings of full motor strength, normal muscle tone and bulk, and grossly intact sensation. (R. 290, 294, 296, 298, 300, 303, 306). In May and June 2012, Dr. Kin-Kartsimas noted that Plaintiff was unable to sit comfortably in her chair and was constantly changing positions. (R. 291, 294). On June 12, 2012, Plaintiff reported an exacerbation of her pain and requested injections. (R. 291). On physical examination, Dr. Kin-Kartsimas noted "significant limitation in the range of motion" of the lumbar spine in all planes due to pain and discomfort, and tenderness to palpation over the CV joints 1 through 5, as well as over the left trapezius muscle and illeolumbar ligaments. (R. 291–92). Dr. Kin-Kartsimas administered injections, and Plaintiff reported immediate relief. (R. 292). When Plaintiff returned the next month, she reported some improvement after the injection, although Dr. Kin-Kartsimas did note severe tenderness in the lumbar and cervical paraspinal muscles. (R. 289–90).

On October 1, 2012, Plaintiff attended a psychological consultation with Gregory Rudolph, Ph.D. (R. 315–18). Plaintiff exhibited a somber, depressed mood and her affect was anxious. (R. 317). However, she exhibited no thought disturbances and she was polite, alert and oriented, with clear thought processes. (R. 316–17). She displayed appropriate memory for recent and remote events and she displayed an adequate fund of information. (R. 317). She also displayed good ability to "use judgment and reasoning skills." (R. 315, 317). Dr. Rudolph diagnosed depression NOS and anxiety disorder, and assigned a GAF score of 45.[2]

---

[2] The GAF includes a scale ranging from 0–100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Rev. 2000) (hereinafter *DSM–IV*). A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* at 34. The Court notes that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013); *see Williams v. Colvin,* 757 F.3d 610, 613 (7th Cir. 2014) (recognizing that the American Psychiatric Association abandoned the GAF scale after 2012). *DSM-IV* at 34.

On October 13, 2012, Plaintiff underwent a consultative internal medicine examination by Dr. Julia Kogan, M.D. (R. 320–28). Plaintiff reported a history of fibromyalgia and low back pain status post lumbar discectomy and fusion. (R. 321). She stated that she had difficulty bending, could not sit for more than two hours, and could not vacuum or mop. (*Id.*). Plaintiff reported constant low back pain, which she rated between 6–9/10. (*Id.*). She stated that she was on chronic narcotic pain medications and seeing a pain management specialist. (*Id.*). Upon physical examination, Plaintiff could ambulate 50 feet independently and she had no difficulty tandem walking, standing and walking on her heels and toes, squatting and arising, arising from a seated position, or getting on and off the examination table. (R. 323, 327–28). No paraspinal muscle spasm or muscle atrophy was observed, and straight leg-raising was negative bilaterally. (*Id.*). Plaintiff had full range of motion in her cervical and lumbar spines, full range of motion in the lower extremities, and normal range of motion in the upper extremities. (R. 323–27). Although Plaintiff stated she had no strength in her hands, Dr. Kogan documented that grip strength was 5/5 in both hands. (R. 327). Sensation and reflexes were normal throughout all extremities. (*Id.*). However, Dr. Kogan did note several positive fibromyalgia trigger points on examination. (R. 320). Dr. Kogan assessed fibromyalgia and post-laminectomy syndrome, and concluded that Plaintiff had no difficulty in standing, bending, sitting, and hearing, and minimal difficulty lifting and carrying. (R. 328). Plaintiff additionally had no difficulty with speech, gait, or fine manipulation and handling of small objects. (*Id.*).

On October 17, 2012, state agency psychological consultant Thomas Low, Ph.D., opined that Plaintiff's mental impairment was not severe and that it resulted in only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (R. 81–83). Dr. Low noted that Plaintiff was

not receiving any treatment for depression and was merely taking Xanax for anxiety provided by her primary care provider. (R. 83). He also noted Plaintiff exhibited normal mental status except for a depressed mood when she presented for the consultative examination and he further noted that her activities of daily living were functional, except for limitations imposed by her physical condition. (*Id.*). Dr. Low's opinion was affirmed at the reconsideration level by state agency psychological consultant Russell Taylor, Ph.D. (R. 93–94).

State agency medical consultant Francis Vincent, M.D., opined on October 19, 2012, that Plaintiff retained the RFC to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (R. 84). State agency medical consultant James Hinchen, M.D., affirmed Dr. Vincent's RFC assessment at the reconsideration level on April 11, 2013. (R. 95).

The record also contains treatment notes from Plaintiff's primary care physician, Dr. Gopal Bhalala, M.D. from June 25, 2012 through May 21, 2015. (R. 335–414, 432–34). Unfortunately, Dr. Bhalala's handwritten notes from June 2012 through March 2013 are illegible. (R. 335–55). In May 2013, however, Dr. Bhalala's physical examination findings included normal gait, normal sacroiliac joint mobility bilaterally, no vertebral spine tenderness, no paraspinal tenderness, and no sacroiliac joint tenderness. (R. 375). Straight leg-raising test was negative bilaterally, and motor function and sensation in the lower extremities were normal. (*Id.*). Dr. Bhalala assessed "unspecified backache," depressive disorder NOS, and fibromyalgia. (*Id.*). The majority of the subsequent treatment records are filled with inconsistencies. For example, the physical examination notes pertaining to inspection and palpation of the lumbar spine and lower back read as follows:

> INSPECTION: significant muscle spasm. PALPATION: Vertebral spine tenderness, paraspinal tenderness, SI joint tenderness, paraspinal spasm, no

vertebral spine tenderness, no paraspinal tenderness, vertebral spine tenderness, paraspinal tenderness, SI joint tenderness, paraspinal spasm, no vertebral spine tenderness, no paraspinal tenderness.

(*See, e.g.*, R. 392, 395, 399, 402, 405, 408, 411, 432). Significantly, under "general examination" at each of these visits, Dr. Bhalala specifically states, "Back: no CVA tenderness." (*See, e.g.*, R. 393, 396, 400, 402, 405, 408, 411, 432). Furthermore, at each examination Plaintiff's gait, motor functioning, sensory examinations, and reflexes were found to be normal. (R. 380–413, 432–33). Dr. Bhalala's treatment notes reflect little more than the routine filling of prescriptions.

An MRI of the lumbar spine performed in November 2013 revealed a satisfactory postoperative status at L5-S1 with no signs of complication. (R. 430). Moderate degenerative facet hypertrophic changes at L4-L5 with a prominent bulging disc were noted, but there was no evidence of significant spinal canal compromise or nerve root encroachment. (*Id*). Similarly, an MRI of the cervical spine performed in December 2013 revealed only degenerative changes and no evidence of significant spinal canal compromise or nerve root encroachment. (R. 428).

### III. Plaintiff's Testimony

Plaintiff testified that on a normal day she wakes up and experiences pain. (R. 47). She takes Tylenol or ibuprofen and her other pain medications. (*Id*.). She wears a Fentanyl patch every day, and is also prescribed Soma, Norco, Xanax, Ambien, and Zomig. (*Id*.). She occasionally walks her dogs across the street if her husband or son is unable to help. (R. 47–48). Some days she does laundry, although her husband has to carry the laundry up the stairs for her. (R. 48). She no longer makes dinner every day like she used to. (*Id*.). Now, she cooks about twice a week, and usually by the time she is done she is in too much pain to eat and has to go lay down. (*Id*.). Some days she works on the bills on the computer, but cannot sit for long periods of time, so she usually has to get up or go and lay down. (R. 49). She has to use a heating pad every

day. (*Id*.). Plaintiff drives herself locally, but requires someone else to drive her longer distances. (R. 41). She cannot grocery shop by herself. (*Id*.). Plaintiff reported two recent trips to Germany to visit her oldest son. (R. 50–51). She occasionally goes to visit her mother in Dallas. (R. 52). When her mother had hip surgery one year earlier, Plaintiff stayed with her mother for two weeks to help out with the recovery. (*Id*.). Plaintiff goes to church about every six weeks. (R. 53). She used to love to garden, but cannot do that anymore. (*Id*.).

Throughout the day, Plaintiff has to alternate sitting, standing, and lying down. (R. 54). On a typically night, she gets at most four hours of uninterrupted sleep. (*Id*.). Plaintiff stated that the Ambien does not help with sleep, but her doctor is afraid to put her on anything stronger. (R. 55). Plaintiff testified that the pain in her back is constant, and feels like there is a knife there. (*Id*.). If she sits or stands too long, she gets a burning sensation between the shoulder blades. (*Id*.). Her knees and wrists constantly hurt. (*Id*.). She wears braces on her wrists, which provide relief. (R. 56). With her pain medications, her pain level on an average day is around a six or seven. (*Id*.).

## IV. ALJ Decision

On January 26, 2015, the ALJ issued a written determination denying Plaintiff's DIB application. (R. 14–26). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 17, 2010, the alleged disability onset date. (R. 16). At step two, the ALJ found that Plaintiff had the severe impairments of status post lumbar discectomy and fusion, degenerative disc disease, asthma, and arthralgia. (*Id*.). He also determined Plaintiff's fibromyalgia, depression, and anxiety to be non-severe impairments. (R. 17). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20

7

C.F.R. Part 404, Subpart P, App'x 1. (R. 18). The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could never climb ladders, ropes, or scaffolds, and she could only occasionally balance, kneel, stoop, crouch, crawl, or climb ramps or stairs. (R. 19). At step four, the ALJ concluded that Plaintiff could perform her past relevant work as an administrative clerk or general clerk, leading to a finding that she is not disabled under the Act. (R. 25).

## STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether a plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). Although we review the ALJ's decision deferentially, he must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[ ] articulat[ion] of her justification" is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

## ANALYSIS

Plaintiff appears to raise three primary arguments on appeal.[4] First, Plaintiff contends that the ALJ erred in determining that she did not meet or medically equal Listing 1.04. Second,

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

[4] The Court's review in this case is hindered by Plaintiff's failure to develop and support her arguments. Only five of the ten pages of Plaintiff's brief are dedicated to her actual allegations of error on appeal. [Dkt. 9, at 6–10]. Moreover, this substantive portion of her brief cites to no statutes and only two cases, both of which are from the Fourth Circuit. [Dkt. 9, at 9]. Plaintiff points to no medical evidence from the record in support of her arguments,

Plaintiff asserts that the ALJ improperly assessed her subjective symptom statements and credibility. Finally, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence, namely because the ALJ improperly considered her testimony, improperly assessed the medical opinion evidence, and failed to accord controlling weight to the opinion of her treating physician. The Court addresses each of these issues in turn.

### A. The ALJ Did Not Err at Step Three

Plaintiff's first argument—that the ALJ improperly found that Plaintiff's conditions did not meet or medically equal Listing 1.04—is a non-starter. It is axiomatic that Plaintiff bears the burden of proving that she meets or equals all of the criteria of a listing. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). Plaintiff asserts that she met or equaled the criteria of Listing 1.04 for disorders of the spine, and yet she offers no substantive argument or medical evidence in support of this claim. "In order to show that reversal is in order, a claimant is required to identify the medical evidence showing that he or she would have satisfied the Step 3 criteria if the ALJ had considered the relevant issues." *Heuschmidt v. Colvin*, No. 14 CV 4377, 2015 WL 7710368, at *3 (N.D. Ill. Nov. 30, 2015). The closest Plaintiff comes to making a specific listing argument is her assertion that, because she had spinal arachnoiditis symptoms (muscle spasms, vertebral spine tenderness, paraspinal tenderness, and SI joint tenderness), she met Listing 1.04. However, Listing 1.04(B) specifies that any diagnosis of spinal arachnoiditis must be "confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging." Plaintiff cites no such evidence. Furthermore, both of the state agency reviewing

---

and instead relies solely on her testimony from the administrative hearing. As the Seventh Circuit has stated, "judges are not like pigs, hunting for truffles buried in [the record]," *Gross v. Town of Cicero, Ill.,* 619 F.3d 697, 702 (7th Cir. 2010); *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991), and perfunctory, undeveloped and unsupported arguments may be deemed waived, *e.g., United States v. Thornton,* 642 F.3d 599, 606 (7th Cir. 2011); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

physicians concluded that Plaintiff did not meet or medically equal any listed impairment. "Because no other physician contradicted these two opinions, the ALJ did not err in accepting them." *Filus*, 694 F.3d at 867 (citing *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (other citation omitted)). Accordingly, Plaintiff has failed to meet her burden of showing that she met or equaled a listing.

B.  **The ALJ's Assessment of Plaintiff's Subjective Symptom Statements was Supported by Substantial Evidence**

Plaintiff next argues that the ALJ erred in assessing her subjective symptom statements and credibility. The Social Security Administration determined recently that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of [the claimant's] symptoms." SSR 16-3p, at *2. "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, like former SSR 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (citation omitted). Although the Court will scrutinize the ALJ's assessment to determine whether it conveys any "fatal gaps or contradictions," it will "give the opinion a commonsensical reading rather than nitpicking at it." *Castile v. Astrue*, 617

F.3d 923, 929 (7th Cir. 2010) (quotation and citation omitted). In this case, the Court finds that the ALJ's subjective symptom evaluation is supported by substantial evidence.

Here, the ALJ properly considered the factors set forth in 20 C.F.R. § 404.1529(c) and provided specific and well-supported reasons for his conclusions. For example, the ALJ considered Plaintiff's activities of daily living, such as taking the dogs outside, cooking, doing laundry, driving, and helping out in the garden. (R. 23). The ALJ also noted Plaintiff's two trips to Germany and her 2013 trip to Dallas to assist her mother in her recovery after hip surgery, doing chores as needed. (*Id.*). Plaintiff suggests the ALJ overstated her activities, but the ALJ explicitly recognized that none of Plaintiff's activities in and of themselves equated to performing full-time work. (*Id.*). What the ALJ did conclude, however, was that these activities "do reflect more capacity that the claimant has alleged and they strongly suggest the ability to work within the confines of the above residual functional capacity." (*Id.*). The ALJ also considered Plaintiff's testimony that her back pain was aggravated by reaching, bending, sitting, lifting, or standing, and factored this testimony into his RFC by limiting "the amount of bending the claimant would have to perform and the amount of weight she would have to lift." (R. 22). The ALJ further considered Plaintiff's prescription medications, noting that the more recent treatment notes reflected prescriptions for Norco, the Fentanyl patch, Soma and Ambien as needed, and Xanax. (R. 23). The ALJ noted the treatment notes did not contain repeated or frequent complaints of side effects, and reasonably concluded that the lack of an increase in the medications suggested overall effectiveness.

In addition to the factors set forth in 20 C.F.R. § 404.1529(c), the ALJ also discussed a lack of support in the objective medical evidence for the severity of the limitations and restrictions alleged. Although an ALJ may not discount a claimant's pain allegations based solely

12

on a lack of supporting objective evidence, 20 C.F.R. § 404.1529(c)(2), the ALJ may consider that factor "as probative" in assessing the claimant's symptoms. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) (noting that "discrepancies between the objective evidence and self-reports may suggest symptom exaggeration."). The ALJ cited to treatment records throughout the longitudinal record showing unremarkable and essentially normal findings with regard to gait, sensation and motor function in the extremities, and range of motion. (R. 20–21). He further relied on Dr. Kogan's consultative examination findings and the reports of two non-examining agency physicians, all of which support his evaluation of Plaintiff's symptoms. (R. 21, 23–24). Accordingly, the ALJ did not err by taking the lack of objective evidence into consideration in evaluating Plaintiff's subjective symptom statements.

In sum, it is well-established that "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (emphasis in original). The Court is satisfied with the ALJ's analysis and finds that the ALJ's conclusion regarding Plaintiff's subjective symptom statements is supported by substantial evidence.

## C. The ALJ's RFC Determination is Supported by Substantial Evidence

Finally, Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence, namely because the ALJ improperly considered her testimony, improperly assessed the medical opinion evidence, and failed to accord controlling weight to the opinion of her treating physician. A plaintiff's RFC is an administrative assessment of what work-related activities an individual can perform despite his limitations. 20 C.F.R. § 404.1545; Social Security Ruling ("SSR") 96-8p; *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2011). In assessing a plaintiff's RFC, the ALJ must consider both the medical and nonmedical evidence in the record.

*Id.* Additionally, the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts. SSR 96-8p; *see also Brisco ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). For the reasons that follow, the Court concludes that the ALJ's RFC determination is supported by substantial evidence.

1. **The ALJ Properly Considered Plaintiff's Testimony and Subjective Symptom Statements**

Within Plaintiff's critique of the ALJ's RFC finding, she asserts that the ALJ did not properly consider her testimony regarding the intensity, persistence, and limiting effects of her subjective symptoms. Specifically, Plaintiff contends that the ALJ ignored her testimony that she has to constantly alternate between sitting, standing, and lying down while completing basic daily activities. (R. 49, 54, 56). But the ALJ specifically acknowledged this testimony, and adequately explained his reasons for concluding that Plaintiff's symptoms are not as severe as alleged. "While the law requires an ALJ to weigh all the credible evidence and make unbiased factual findings, it does not compel an ALJ to accept wholly the claimant's perception of a disability." *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). Here, the ALJ discussed the objective medical evidence, including the consistent examination findings of normal gait, intact sensation and motor function in the extremities, and absence of CVA tenderness. (R. 20–21). The ALJ noted that the diagnostic imaging further supported his RFC determination, as MRIs of the lumbar and cervical spines revealed no evidence of any significant spinal canal compromise or nerve root encroachment. (R. 21, 428–31). At the October 2012 consultative examination, Dr. Kogan noted Plaintiff had no difficulty tandem walking, standing and walking on her toes and heels, squatting and arising, arising from a seated position, or getting on and off the examination table. (R. 328). The ALJ further noted the state agency medical consultant's opinion that Plaintiff had the capacity to work at the light exertional level was consistent with the record as a whole

and was not contradicted by any treating source. (R. 24). Moreover, as discussed above, the ALJ's evaluation of Plaintiff's subjective symptom statements was supported by substantial evidence. Plaintiff has failed to offer a persuasive or well-developed argument to the contrary.

## 2. The ALJ Properly Weighed the Medical Opinion Evidence

Plaintiff further argues that it was error for the ALJ to rely on the opinions of non-examining state agency consultants in formulating his RFC determination. It is well-established that "it is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation." *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). Here, state agency reviewing physician Dr. Vincent opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for about six hours in an eight-hour workday, and could sit for about six hours in an eight-hour workday. (R. 84). This opinion was affirmed by state agency reviewing physician Dr. Hinchen at the reconsideration level. (R. 95). The ALJ accorded substantial weight to Dr. Vincent's opinion, as it was consistent with the medical evidence of record and was not contradicted by any treating source. (R. 24). Rather than citing any objective evidence that contradicts Dr. Vincent's opinion, Plaintiff instead refers only to her testimony about her limitations in her daily activities and her need to constantly alternate between sitting, standing and lying down, which, as discussed above, the ALJ appropriately considered and weighed.

Similarly, state agency psychological consultant Dr. Low opined that Plaintiff's mental impairment was not severe and resulted in only mild restriction of activities of daily living, and only mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. (R. 82–83). This opinion was affirmed at the reconsideration level by state agency psychological consultant Dr. Taylor. (R. 93–94). The ALJ accorded great weight to Dr.

Low's opinion because it was strongly supported by the objective evidence and was not contradicted by a treating source. (R. 24). Plaintiff makes a half-hearted attempt at attacking the ALJ's reliance on Dr. Low's opinion by noting that Dr. Low had never examined Plaintiff and instead only reviewed the records. But, once again, Plaintiff has made no effort to identify any specific evidence that contradicts Dr. Low's opinion, and the Court is simply not persuaded that the ALJ erred in accepting Dr. Low's conclusions.

### 3. The ALJ's Failure to Discuss the Appropriate Weight to be Accorded to Plaintiff's Treating Physician was Harmless Error

Even if Plaintiff were correct that the ALJ erred when he failed to articulate the weight he accorded to Plaintiff's treating physician, Dr. Bhalala, any such failure would be harmless error. The Court does not need to remand this case despite this error "if it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

The federal regulations make it clear that an ALJ must only assign weight to opinion evidence; it is not necessary to assign weight to every piece of medical evidence in the record. *See* 20 C.F.R. § 404.1527. While the Court recognizes that the evidence establishes a lengthy treating relationship between Plaintiff and Dr. Bhalala, Dr. Bhalala never offered an opinion regarding Plaintiff's functional capacities during the relevant period. For example, although Dr. Bhalala consistently diagnosed Plaintiff with unspecified backache and fibromyalgia, his treatment notes do not indicate whether those diagnoses would result in work-related limitations, and he never extended his findings to an evaluation of Plaintiff's functional capacities. The ALJ himself addressed this deficiency in his discussion of the opinions of the state agency consultants by noting that their opinions had not been contradicted by any treating source. (R. 24). Because Dr. Bhalala never offered an opinion as to Plaintiff's functional limitations, the Court is

confident that no reasonable ALJ on remand would reach a different conclusion regarding Plaintiff's RFC. Accordingly, the Court finds that the ALJ's failure to weigh Dr. Bhalala's opinions was harmless error.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment is granted. The final decision of the Commissioner is affirmed.


Entered: 9/13/2017

_____
U.S. Magistrate Judge, Susan E. Cox